UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TONYA M. HALL,

                                        Plaintiff,

                                                            Case # 14-CV-6059-FPG

v.

                                                            DECISION AND ORDER

COUNTY OF ONTARIO,
BRIAN D. DENNIS in his official and
individual capacities, and
TERENCE CORDON in his official and
individual capacities,

                                        Defendants.

_____

INTRODUCTION

Plaintiff Tonya Hall brings this action under 42 U.S.C. § 1983, alleging that Defendants County of Ontario, Assistant Ontario County District Attorney Brian D. Dennis, and Ontario County Deputy Sheriff Terence Cordon maliciously prosecuted her, and in doing so, violated her rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as under the New York State Constitution.  ECF No. 13.  Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's allegations fail to state a claim upon which relief could be granted.  ECF No. 15.  For the following reasons, Defendants' Motion to Dismiss is granted in part, and denied in part.

BACKGROUND[1]

Plaintiff's claims stem from the Defendants' criminal investigation and prosecution of her, which was based on a public assistance application she submitted in May 2010.  ECF No.

_____

[1] Since all well-pleaded facts are assumed to be true for the purposes of a Motion to Dismiss under Rule 12(b)(6), the facts here are recited as Plaintiff has alleged them in her Amended Complaint.

13.  That application did not list Craig Foster, who is the father of the Plaintiff's three children, as a member of her household.  *Id.* at 3.  Foster was also the owner of 3939 Charing Cross in Canandaigua when the Plaintiff listed that address as her residence on the application in question.  *Id.* at 1-2.  Plaintiff alleges that she completed the application and submitted it to Ontario County Social Services in an effort to "apply for a referral from the Oneida Nation Health Center" in order to obtain health coverage for herself and her three children.  *Id.* at 3. Plaintiff is a registered member of the Saint Regis Mohawk Tribe, and her tribal membership could make her and her children eligible for certain programs funded by the Indian Health Service ("IHS").  *Id.* at 9-10.

In April 2011, Ontario County received a fraud referral claiming that the Plaintiff was receiving public benefits while living with Mr. Foster in an affluent Canandaigua neighborhood. *Id.* at 11.   From this tip, the Ontario County Department of Social Services initiated an investigation into possible welfare fraud by the Plaintiff.  *Id.* at 2-4.  The purpose of the investigation was to determine whether Craig Foster lived in the home at 3939 Charing Cross between May 2010 and January 2011.  *Id.* at 12.  Ontario County Deputy Sheriff Terence Cordon ("Deputy Cordon") headed the investigation.  *Id.* at 3.  Deputy Cordon works part-time for Ontario County to investigate welfare fraud claims.  *Id.* at 15.  After conducting an investigation that spanned more than five months, involved multiple witnesses, and involved several visits to 3939 Charing Cross, Deputy Cordon arrested the Plaintiff on October 30, 2011.  *Id.* at 16.  The Ontario County District Attorney's Office filed a felony complaint against the Plaintiff on the next day, which charged her with two felony counts of offering a false instrument for filing and one felony count of welfare fraud.  *Id.*

Assistant Ontario County District Attorney Brian D. Dennis ("ADA Dennis") prosecuted the case against the Plaintiff. *Id.* at 5. On March 22, 2012, an Ontario County Grand Jury indicted the Plaintiff on felony counts of offering a false instrument for filing and welfare fraud. ECF No. 15 at 5.[2]

ADA Dennis brought the case against the Plaintiff to trial, and an Ontario County jury ultimately acquitted her of all charges on February 8, 2013. ECF No. 13 at 22. After her acquittal, the Plaintiff commenced this action (and later amended her Complaint) against ADA Dennis, Deputy Cordon, and the County of Ontario, which the Defendants now seek to dismiss. ECF Nos. 1, 13, 15.

<u>DISCUSSION</u>

I.    <u>Generally Applicable Legal Standards</u>

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that the facts alleged in the complaint, when taken as true, fail to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-56 (2007). While "not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible complaint is one in which the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* A complaint need not have detailed factual allegations in order to survive a 12(b)(6) motion to dismiss, but a pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint

---

[2] Plaintiff's Amended Complaint does not expressly reference the date and counts of the indictment, but it does make multiple references to the criminal case against her, including the grand jury proceedings. *See* ECF No. 13 at 16-19. Accordingly, I find that the indictment is "incorporated in [the complaint] by reference [. . .] and may be considered" in adjudicating Defendants' Motion to Dismiss. *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations ... a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678.

The statute at issue in this case, 42 U.S.C. § 1983, is not itself a source of any substantive rights, but rather is a vehicle by which citizens may seek to vindicate rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  "[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights."  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).  Allegations that amount to "nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."  *Id.*

Regarding the cause of action for malicious prosecution, a Plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for the proceeding; and (4) actual malice as a motivation."  *Drummond v. Castro,* 522 F. Supp. 2d 667, 677 (S.D.N.Y. 2007) (citing *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir. 1995)).  At the same time, probable cause is a complete defense to malicious prosecution claims.  *Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir. 2010) (citing *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003)).

Although municipalities may be sued under 42 U.S.C. § 1983, a local government such as the County of Ontario may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Municipalities are not subject to § 1983 liability on the basis of a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. To hold a municipality liable in a § 1983 action, a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citations and quotations omitted).

II.     The Claims Against ADA Dennis

ADA Dennis argues the Plaintiff's Amended Complaint must be dismissed as against him because he is entitled to absolute immunity. I agree.

"Absolute immunity of prosecutors is grounded in the fear that the public trust of the prosecutor's office would suffer if the prosecutor were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 424–25(1976)). As such, a prosecutor is absolutely immune from § 1983 liability for conduct in furtherance of prosecutorial functions intimately associated with initiating or presenting the state's case. *Imbler,* 424 U.S. at 430. "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Id.* at 661 (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). Such "quintessential prosecutorial functions" include acts taken by a prosecutor in preparation for the initiation of a judicial proceeding or trial. *Warney*, 587 F.3d at 122.

5

The Supreme Court has further explained that a prosecutor's functions preliminary to the initiation of proceedings include "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Imbler*, 424 U.S. at 431 n. 33. Further, the functional test for absolute immunity is an objective test, meaning it does not depend upon the state actor's subjective intent. *Dory,* 25 F.3d at 83; *see also Burns v. Reed,* 500 U.S. 478, 487–88 (1991) (allegations that prosecutor "deliberately misled the Court" during preliminary hearing were deemed irrelevant where the prosecutor's objective act—presenting evidence at the hearing—enjoyed absolute immunity). Indeed, prosecutorial conduct that might be "reprehensible" yet still within the scope of traditional prosecutorial functioning, such as presenting knowingly perjured testimony or deliberately withholding exculpatory information, is shielded by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005).

Plaintiff's claims against ADA Dennis in bringing and maintaining the criminal case against the Plaintiff revolve largely around the alleged failure to disclose certain evidence and his conduct in eliciting trial testimony. *See* ECF No. 13 at 21-24. But these actions are among the "quintessential prosecutorial functions" that the doctrine of absolute immunity exists to protect. Even if ADA Dennis failed to disclose information deliberately or in bad faith – a finding I do not make − ADA Dennis would still be absolutely immune from suit. *See Shmueli*, 424 F.3d at 237. Further, the six-month delay in her criminal case that Plaintiff complains of, even if initiated by ADA Dennis, is well within his prosecutorial discretion to consider "whether and when" to proceed with a case, which is protected by absolute immunity. *Imbler*, 424 U.S. at 431 n. 33. Plaintiff's additional claims regarding ADA Dennis' presentation of evidence to the grand

and petit juries are also plainly within the ambit of prosecutorial functions shielded by absolute immunity.

Perhaps recognizing the breadth of absolute immunity for prosecutorial functions, the Plaintiff contends that ADA Dennis "performed investigatory functions in connection with the evidence concerning medical benefits and other evidence concerning the charges against Ms. Hall."  ECF No. 13 at 14.  However, Plaintiff does not allege any facts to plausibly indicate that ADA Dennis ceased performing "quintessential prosecutorial functions" and instead engaged in investigatory work.  Absent any pled facts to support the conclusion that ADA Dennis undertook investigative work, the Plaintiff's statement is nothing more than a legal conclusion masquerading as a factual allegation, and such conclusory allegations are insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678; *see also In Re NYSE Specialists Sec. Litig.*, 503 F.3d at 95.

Plaintiff also claims that Foster had a romantic relationship with a separate woman at times relevant to the underlying investigation, and that ADA Dennis "had a personal or professional relationship" with this individual.  ECF No. 13 at 4, 14, fn 2.  Even taking these facts as true, they add nothing to the analysis, since nowhere in the Amended Complaint is there any non-conclusory allegation that could take ADA Dennis' conduct out of the realm of immune prosecutorial activities.

In short, because the facts alleged in Plaintiff's Amended Complaint indicate that ADA Dennis was engaged in quintessential prosecutorial functions, he is absolutely immune from suit, and the claims against him are hereby dismissed.

III.    The Claims Against Deputy Cordon

Deputy Cordon similarly argues the Plaintiff's Amended Complaint must be dismissed as against him because he is entitled to qualified immunity.

While prosecutors performing traditional prosecutorial functions are entitled to absolute immunity, public officials – including law enforcement officers – are afforded qualified or "good faith" immunity in § 1983 actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Officials with qualified immunity are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Accordingly, Deputy Cordon will be immune from liability if he did not violate any of Plaintiff's clearly established constitutional or statutory rights.

Plaintiff alleges Deputy Cordon is liable for malicious prosecution because he pursued a criminal investigation against her without probable cause and in violation of Plaintiff's right to due process of law. ECF No. 13 at 24-25. A § 1983 claim for malicious prosecution is essentially analyzed as a Fourth Amendment claim. *Albright v. Oliver*, 510 U.S. 266, 274 (1994). The qualified immunity test is based on probable cause, but is nonetheless "more favorable to the officers than the [test] for probable cause." A*ckerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (quotation marks omitted). Specifically, the applicable test is not whether officials had probable cause to arrest and pursue criminal charges, but whether they had "arguable probable cause." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation marks omitted). Valid probable cause may rely on mistaken information "so long as the arresting officer acted reasonably and in good faith in

relying on that information." *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994). Nonetheless, "'arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New* York, 478 F.3d 76, 87 (2d Cir. 2007).

An indictment establishes a rebuttable presumption of probable cause. *Savino v. City of New York*, 331 F.3d 63, 69 (2d Cir. 2003). The plaintiff in a malicious prosecution claim bears the burden of rebutting this presumption of probable cause, *Id.,* and to succeed in a malicious prosecution action after a plaintiff has been indicted, she must establish that the indictment was "procured by fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 83 (1983)).

Because qualified immunity protects officials not merely from liability but from litigation, the issue should be resolved as early in the process as possible, to avoid subjecting public officials to time consuming and expensive discovery procedures. *See, e.g., Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). And while qualified immunity *can* be established by the facts alleged in a complaint, *see Wood v. Moss,* --- U.S.----, 134 S.Ct. 2056 (2014), I am also mindful of the Second Circuit's admonition that a defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle ... and is usually not successful." *Field Day, LLC v. County of Suffolk,* 463 F.3d 167, 191–92 (2d Cir. 2006).

At the motion to dismiss stage, this defense will succeed only where entitlement to qualified immunity can be established "based [solely] on facts appearing on the face of the complaint." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004). For these reasons, a motion to dismiss "is a mismatch for immunity and almost always a bad ground of dismissal." *Id.*

(quoting *Jacobs v. City of Chicago,* 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J.,

concurring in part)).

The Second Circuit recently stated that "defendants moving to dismiss a suit by reason of

qualified immunity would in almost all cases be well advised to move for summary judgment,

rather than for dismissal under Rule 12(b)(6) or 12(c)."  *Barnett v. Mount Vernon Police Dep't,*

523 F. App'x 811, 813 (2d Cir. 2013).  Put another way,

> a defendant presenting an immunity defense on a Rule 12(b)(6)
> motion instead of a motion for summary judgment must accept the
> more stringent standard applicable to this procedural route.  Not
> only must the facts supporting the defense appear on the face of the
> complaint ... the plaintiff is entitled to all reasonable inferences
> from the facts alleged, not only those that support his claim, but
> also those that defeat the immunity defense.  On the other hand,
> with a motion for summary judgment adequately supported by
> affidavits, the party opposing the motion cannot rely on allegations
> in the complaint, but must counter the movant's affidavits with
> specific facts showing the existence of genuine issues warranting a
> trial.  *See* Fed. R. Civ. P. 56(c).  A party endeavoring to defeat a
> lawsuit by a motion to dismiss for failure to state a claim faces a
> "higher burden" than a party proceeding on a motion for summary
> judgment.  *See* Moore's Federal Practice § 56.30[3][b]; *see also id.*
> § 56.30[3][d].

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Under this difficult and stringent standard, I cannot conclude that "on the face of the

[amended] complaint" that Deputy Cordon is entitled to qualified immunity.  Limiting my

analysis to the Amended Complaint and taking all of the Plaintiff's facts as true and drawing all

reasonable inferences in her favor, I cannot conclude as a matter of law that Deputy Cordon is

entitled to immunity – perhaps an unsurprising conclusion, since the parties dispute many of the

underlying facts relative to the investigation.

My ruling should not be understood to say that Deputy Cordon *cannot* be entitled to

qualified immunity in this case.  Rather, the posture of this case and the disputed facts make this

a question best resolved through a summary judgment motion, where the parties could present additional factual information that could not be considered on this Rule 12(b)(6) motion.  Indeed, the parties may request of the Magistrate Judge who will supervise discovery that such discovery be, at first, limited to the qualified immunity issue.  However, I leave it up to the parties to make such a request, and leave determination of that request up to the soon-to-be assigned Magistrate Judge.

For these reasons, Deputy Cordon's Motion to Dismiss based upon qualified immunity grounds is denied without prejudice to renewal as part of a properly supported summary judgment motion.

IV.    The Claims Against Ontario County

The final claims brought by Plaintiff seek to hold Ontario County liable for the constitutional deprivations she allegedly suffered by the other named Defendants.  She claims that "Ontario County and its agents and/or employees failed to properly train Officer Cordon in how to conduct an investigation to identify the residence at which a person lives in connection with welfare fraud charges."  ECF No. 13 at 16.  Plaintiff further alleges that Deputy Cordon "was legally restricted from working more than part time on Medicaid fraud investigations and, therefore, could not work the hours necessary to conduct even a minimally adequate investigation as to the allegations against Ms. Hall."  ECF No. 13 at 4.  These claims are governed by the familiar *Monell* standard.

*Monell* provides an avenue for municipal liability under § 1983 based on municipal employees' conduct.  A municipality that implements a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" that deprives plaintiff of a constitutional right may be liable under § 1983.  *Monell*, 436 U.S. at 690.  Section 1983

liability will also attach to a municipality if it violates a plaintiff's constitutional rights through practices "so permanent and well-settled" that they amount to an official "custom." *Id.* However, the mere assertion that an official policy or custom exists "is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). A *Monell* claim cannot survive a motion to dismiss if it is "grounded solely on the conclusory assertions of the plaintiff." *Santos v. New York City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012).

A plaintiff who claims her rights were violated by virtue of inadequate training by a municipality must show "the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives." *Id.* at 389 (quotation marks omitted). To show such deliberate indifference in the failure to train context, a plaintiff must demonstrate that: (1) a policymaker knows "to a moral certainty" that her employees will confront a given situation; (2) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult, or there is a history of employees mishandling that situation; and (3) the incorrect choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992).

Plaintiff contends that training deficiencies, particularly Ontario County's failure to train Investigator Condon regarding welfare fraud investigations, violated her right to due process of law. Plaintiff has failed, however, to point to any evidence of inadequate training by the County. *See Phelan ex rel. Phelan v. Mullane,* 512 Fed. App'x 88, 91 (2d Cir. 2013) ("Plaintiffs do not

point to any training deficiency, and the record evidence on which they rely does not support their argument.").  Plaintiff further fails to allege "how better or different training could have prevented the challenged conduct."  *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004).  Nor has she plausibly alleged that the County or its employees violated any of her constitutional or statutory rights.

Plaintiff sets forth the conclusory allegation that Ontario County fostered "a de facto policy, practice, and/or custom of unlawfully interfering with and/or arresting, without reasonable suspicion or probable cause, individuals who exercise their rights to seek welfare or medical assistance." ECF No. 13 at 26.  She further argues that "[a]ssigning a part-time officer to investigate such cases leads to the obvious result [that the investigating] officer will be unable to investigate the facts [. . .] necessary to determine whether probable cause exists." ECF No. 13 at 16, 21, 26; *see also* ECF No. 17 at 20.  But the conclusory allegations offer no allegations of facts that, taken as true, would support these contentions.  Plaintiff further fails to allege how Deputy Cordon's hours limited the scope of the investigation.  In pointing out the fact that Deputy Cordon worked for the County part time, Plaintiff does not allege that Deputy Cordon's investigation was in any articulable way constrained by his hours or that he failed to do necessary work as a direct result of his schedule.  Plaintiff's allegations that the County's policy of retaining a welfare fraud investigator on a part-time basis violates her constitutional rights is nothing more than a conclusory statement, and is thus not entitled to the presumption of truthfulness.  *See Iqbal,* 556 U.S. at 678.  Without any facts alleged, the Plaintiff has not advanced a plausible allegation that her constitutional rights were violated by virtue of Investigator Cordon's part-time status.

Finally, Plaintiff also seeks to hold Ontario County liable for its employees' actions under the doctrine of *respondeat superior*. ECF No. 13 at 28. However, it is well settled that "[t]here is no *respondeat superior* liability in § 1983 cases," *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Monell*, 436 U.S. at 691), and a municipality is not subject to *respondeat superior* liability or vicarious liability under § 1983 based on its employees' actions. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986).

For all of these reasons, the Plaintiff's Amended Complaint puts forth only conclusory allegations regarding the existence of a municipal practice or policy that violates her constitutional rights. Accordingly, her claims against Ontario County are dismissed.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 15) is GRANTED IN PART, and DENIED IN PART. The Motion is granted with respect to the claims against ADA Dennis and Ontario County, and those parties are hereby dismissed from this action. The Motion is denied with respect to Deputy Cordon, although the qualified immunity issue may be re-raised as part of a properly supported motion for summary judgment. By separate order, this matter will be referred to a United States Magistrate Judge for all pretrial matters, excluding dispositive motions.

IT IS SO ORDERED.

Dated: March 30, 2015
      Rochester, New York

                               /s/ Frank P. Geraci, Jr.
                               HON. FRANK P. GERACI, JR.
                               Chief Judge
                               United States District Court